#### IN THE UNITED STATES DISTRICT COURT

#### FOR THE DISTRICT OF NEW MEXICO

RODERICK AND SARAH SMITH,

      Plaintiffs,

      vs.                                             Civil No. 07-78 WJ/DJS.

JEFF CUTLER, and
YOUR-BEST-RATE FINANCIAL, LLC,

      Defendants.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT CUTLER'S MOTION TO DISMISS BASED ON LACK OF PERSONAL JURISDICTION

THIS MATTER comes before the Court upon Defendant Cutler's Motion to Dismiss for Lack of Personal Jurisdiction, filed March 12, 2007 **(Doc. 10)**.  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied.

#### BACKGROUND

This case is brought under the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA") and the New Mexico Unfair Practices Act, NMSA 1978 57-12-1 et seq. ("UPA"), for impermissible access and use of Plaintiffs' credit reports.

In August 2005, Plaintiffs, who are New Mexico residents ("the Smiths"), obtained a mortgage through a Georgia-based mortgage broker, "Your Best Rate Financial, LLC" ("YBRF").  Mr. Jeff Cutler ("Defendant" for purposes of this motion) is a Georgia resident and the President and Chief Executive Officer of YBRF.  According to the Complaint, the Smiths paid off the mortgage the following year, and re-financed the mortgage with another entity.  They subsequently filed a lawsuit in New Mexico state court, Bernalillo County, alleging fraud and

violations of the UPA, regarding their mortgage transaction with YBRF.[1]

Plaintiffs allege that after Defendants were served with the state court lawsuit, YBRF and Mr. Cutler accessed and obtained the Smiths' credit reports, then used the credit reports by sending them via e-mail to the Smiths' attorney in the state court lawsuit.  Plaintiffs allege that use of their credit reports violated the FCRA and also constitutes an unfair or deceptive trade practice under the UPA.

The instant motion concerns only Defendant Cutler, in which he moves for his dismissal from the case based on lack of personal jurisdiction.

## DISCUSSION

A motion to dismiss is an appropriate procedural vehicle for resolving personal jurisdiction and venue issues.  See Fed.R.Civ.P. 12(b)(2) & (3).  Affidavits, depositions, answers to interrogatories, and similar evidentiary matter may be presented and are freely considered on a motion attacking jurisdiction.  See Sunwest Silver, Inv., v. Int'l Connection, Inc., 4 F.Supp.2d 1284, 1285 (D.N.M. 1998); Jones v. 3M Company, 107 F.R.D. 202, 204 (D.N.M. 1984).

**I.      Legal Standard**

"Federal courts sitting in diversity have personal jurisdiction over nonresident defendants to the extent permitted by the law of the forum." Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 621 (10th Cir. 1988) (citations omitted).  Plaintiffs have the burden of establishing personal jurisdiction over Mr. Cutler.  See, Kuenzle v. HTM Sport-Und Freizeitgeräte AG,102 F.3d 453, 456 (10th Cir.1996).

---

[1] According to Defendant, he was not a party to the state court case, which has since settled.  Mem. Brf. at 2.

New Mexico applies a three-part test to determine whether personal jurisdiction lies over non-residents. The Court must determine whether: (1) the defendant committed an act or omission specifically set forth in New Mexico's long-arm statute;[2] (2) the cause of action arises out of that act or omission; and (3) the defendant has sufficient minimum contacts to satisfy due process concerns. Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. 312, 318 (2002).

Due process requires that a defendant must have sufficient "minimum contacts" with the forum state such that allowing the action to be brought there will not "offend traditional notions of fair play and substantial justice." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319-20 (1945)); see also, Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd., 385 F.3d 1291, 1296 n.1 (10th Cir. 2004) ("A finding of minimum contacts with the forum is necessary, but is not sufficient for the exercise of personal jurisdiction. A district court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case").

New Mexico law merges the analysis of whether a defendant has transacted business or committed a tortious act within New Mexico with the inquiry regarding whether such activities

---

[2] New Mexico's long-arm statute, 1978 NMSA § 38-1-16(A), reads in pertinent part as follows:
    A.    Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from: (1) the transaction of any business within this state;(2) . . . the operation of a motor vehicle upon the highways of this state; (3) the commission of a tortious act within this state; . . .
    . . .
    C.    Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

constitute minimum contacts sufficient to satisfy due process concerns. Tercero, 132 N.M. at 316 (citing Telephonic, Inc. v. Rosenblum, 88 N.M. 532, 534 (1975))  However, this is true only if the cause of action arises from the particular transaction of business or commission of a tortious act, and if the minimum contacts were purposefully initiated by the defendant. 132 N.M. at 317. Thus, Mr. Cutler's conduct under both elements of the long-arm statute must be analyzed within the context of due process. See, Doe v. Roman Catholic Diocese of Boise, Inc., 121 N.M. 738, 742 (Ct.App.1996), cert. denied, 121 N.M. 693 (N.M. May 30, 1996); Caba Ltd. Liability Co v. Mustang Software, Inc., 127 N.M. 556, 984 P.2d 803, 807 (Ct.App. 1999) (meaning of [terms in long-arm statute] is to be equated with the minimum contacts sufficient to satisfy due process.") (internal quotes omitted).

The International Shoe "minimum contacts" standard may be met in either of two ways: specific jurisdiction, or general jurisdiction. Specific jurisdiction is based on a matter occurring in the forum state, and exists when the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state. Id. at 1532-33. The defendant's conduct and connection with the forum state must be such that defendant "should reasonably anticipate being haled into court there." Id. at 1534 (internal quotation marks omitted).

**II.    Analysis**

A.    Personal Jurisdiction in FCRA Cases

Defendant Cutler contends that his only role in this matter arose from his position as an officer of YBRF, which is a named co-Defendant in this case. He asserts that he does not have the requisite contacts with New Mexico to satisfy due process requirements, and that he is not subject to jurisdiction under New Mexico's long-arm statute because he did not transact business or commit a tort in New Mexico. Mr. Cutler maintains that all negotiations, agreements, preparation and performance of the actions alleged in the Complaint took place in Georgia.

Defendant concedes that he requested Plaintiffs' credit reports from First American Credco ("Credco"), a Washington state-based corporation with its principal place of business in San Diego, California, but points out that he was not personally involved in Plaintiffs' loan application. Mr. Cutler also concedes that after the state court lawsuit was filed against YBRF, he corresponded by e-mail to Plaintiffs' attorney, including a copy of Plaintiffs' credit reports. The e-mail correspondence can best be described as an offer by Mr. Cutler to negotiate some kind of compromise or settlement with Plaintiffs.[3] Defendant contends that one request for a credit reports does not constitute doing business in New Mexico.

However, it seems that courts which have addressed the issue of personal jurisdiction in cases involving alleged FCRA violations resulting from authorized credit inquiries, view these cases *sui generis*. Personal jurisdiction can be found to exist in a forum where a non-resident defendant obtains credit reports without the permission of the resident plaintiff. The reasoning

---

[3] Plaintiffs' attorney in the state case appears to be the same counsel representing Plaintiffs in the federal case. Defendant requests that the letter to Plaintiffs' counsel, a copy of which is attached as Exhibit A to Plaintiffs' response, be stricken under Fed.R.Evid 408 which disallows the use of settlement letters to prove liability. The Court agrees that the e-mail cannot be admitted to prove liability. It is relevant, however, to the personal jurisdiction issue as it is evidence of Defendant's contact with New Mexico.

used by courts is that defendant's conduct in conducting the unauthorized credit inquiry is purposely directed at the resident in the forum state, and causes injury to that individual. See, e.g., Cole v American Family Mutual Ins. Co., et al., 333 F.Supp.2d 1038 (D.Kan. 2004) (where Kansas resident alleged emotional injuries and distress resulting from defendant's intentionally obtaining plaintiff's credit report knowing plaintiff resided in Kansas, it was reasonable to conclude that defendant knew his actions would have specific impact in Kansas);[4] Andrews v. Prestige Ford Garland Ltd. Partnership, 2005 WL 3297339 (W.D.Ok. 2005) (plaintiff made showing of specific jurisdiction over defendant where Texas defendant accessed credit reports of Oklahoma resident without authorization, stole his credit identity and used it to lease and purchase certain vehicles for other customers, and where the court found substantial connection with the forum state existed due to the nature of the personal information being accessed, and defendant's knowledge that plaintiff was a resident of the forum state); Myers v. Bennett Law Offices, 238 F.3d 1068 (9th Cir. 2001) (in requesting credit reports on Nevada residents, defendant Utah law firm engaged in conduct expressly aimed at forum state; Bils v. Nixon, Hargrave, Devans & Doyle, 880 P.2d 743 (Az.Ct.App. 1994) (court found that there was personal jurisdiction over out-of-state law firm that illegally accessed plaintiff's credit report where firm representing former wife in child visitation dispute used husband's credit report to obtain evidence against him in dispute).

These cases have found that the exercise of personal jurisdiction in situations does not

---

[4] Cole notes that neither that court nor the Tenth Circuit "has addressed a personal jurisdiction question when dealing with an alleged FCRA violation that results from impermissibly obtaining a credit report." 333 F.Supp.2d at 1047. Thus, my analysis is necessarily based on relevant case law from other courts.

offend notions of "fair play and substantial justice," in light of the Congressional intent behind the enactment of the FCRA to prevent invasions of consumers' privacy. Cole, 333 F.Supp.2d at 1048 (citing Zamora v. Valley Fed.Sav. & Loan Ass'n, 811 F.2d 1368, 1370 (10th Cir. 1987)). In invasion of privacy actions, the resulting injury "necessarily occurs in the forum where the plaintiff was injured." Id.(citing Rinsley v. Brandt, 700 F.2d 1304, 1307 (10th Cir. 1983)). This line of reasoning falls squarely within one of the other arguments raised by Plaintiffs that a "tortious act" can occur in New Mexico even when the harmful event originates outside the state, if the injury itself happens in New Mexico. The "place of the wrong" rule, accepted by the New Mexico Supreme Court, states that the "place of the wrong" is "the location of the last act necessary to complete the injury." See, Santa Fe Technologies, Inc. v. Argus Networks, Inc., 131 N.M. 772, 781, 42 P.3d 1221, 1230 (N.M.App., 2001).

Defendant argues that those cases can be distinguished from the present situation because they did not involve the question of personal jurisdiction over a corporate officer, or because they did not address instances where defendant's involvement occurred in response to plaintiff's acts, as did here where Mr. Cutler was simply responding to Plaintiffs' filing of the state court lawsuit. Defendant's efforts to find distinctions in these cases are misplaced because such differences have no bearing on the courts' reasoning or holdings. For example, the explanation that Defendant's alleged conduct was triggered by a need to respond to the state court lawsuit is not relevant to the jurisdictional inquiry. The defendants in Bils made a similar argument, contending that their conduct did not result in a "substantial connection" to the forum state (Arizona) because the only reason for contact with that state was the ongoing custody litigation. However, the court clarified that "it was not [defendants'] involvement in the New York litigation that created the cause of

action, but [defendants'] alleged deliberate improper procurement and use of his credit information against plaintiff." 880 P.2d at 747. The court found that defendants purposefully caused an "event" to occur in forum state because the alleged conduct of defendant was intentionally calculated to cause injury to a resident of a forum state.

The same is true in this case. What is critical is the alleged improper inquiry into Plaintiffs' credit reports, not the reason proffered for the conduct by the defendant.[5] Further, it is unclear why inquiry into, and use of, Plaintiffs' credit reports was necessary to advise Plaintiffs' counsel that settlement negotiations would be welcome.

Plaintiffs allege that Mr. Cutler had no lawful purpose for requesting, accessing, obtaining or using the Plaintiffs' credit reports in September, 2006. Because this alleged conduct was intentionally directed at Plaintiffs, who are New Mexico residents, and is alleged to have caused injury in the form of emotional distress, see, Compl., ¶ 19, I find that this conduct is sufficient to confer jurisdiction on Defendant.

B.   Fiduciary Shield Doctrine

Under the fiduciary shield doctrine, a corporation's contacts generally cannot be attributed to the officers, directors or employees of the corporation when the individuals' acts were carried out solely in their corporate or representative capacities. Ten Mile Indus. Park v. Western Plains

---

[5] It bears mentioning that the jurisdictional analysis does not involve a look into whether Defendant's inquiry into Plaintiffs' credit reports was authorized. The Court relies on the allegations contained in the Complaint. There seems to be no dispute that Mr. Cutler accessed Plaintiffs' credit reports. Rather, Defendant argues that his contact with Credco, and the one-time correspondence by e-mail to Plaintiffs' attorney does not constitute sufficient minimum contacts. See, Bils, 880 P.2d at 746 (dispute concerning purpose about credit inquiries created substantive, rather than jurisdictional, factual issue which is to be left to the jury); see also Benton v. Cameco Corp.,375 F.3d 1070, 1075 (10th Cir. 2004) (plaintiff need only make prima facie showing of personal jurisdiction to defeat motion to dismiss based on lack of personal jurisdiction).

Serv. Corp., 810 F.2d 1518, 1527 (10th Cir. 1987).  Jurisdiction over representatives of a corporation cannot be based on jurisdiction over the corporation itself.  Id.  If the fiduciary shield doctrine applies, jurisdiction over an officer, director or employee of a corporation must be based on that individual's personal contacts with the forum state.  Allen v. Toshiba Corp., 599 F.Supp. 381, 384 (D.N.M. 1984) (Campos, J.).

Mr. Cutler states in his Affidavit that he was acting on behalf of his employer, in the capacities of President and CEO of YBRF, at all times material to the lawsuit.  Defts' Ex. A, ¶¶ 5, 6.  He relies on Allen to argue that contacts YBRF may have had with New Mexico cannot be attributed to him for jurisdictional purposes, under the fiduciary or corporate shield doctrine.  In Allen, the court stated, citing to a Second Circuit case:

> [I]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual."

599 F.Supp. at 384 (citing to Marine Midland Bank v. Miller, 664 F.2d 899, 902 (2d Cir.1981)). The equitable rationale which underlies the fiduciary shield doctrine is that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer."

Plaintiffs are correct that Allen is not dispositive in this case.  In Allen, plaintiffs sued a sales manager regarding defective copiers.  However, the sales manager played no role in causing the manufacturing defect in the copiers.  His role was limited to negotiating the sales contract, which was clearly a benefit to his employer.

Instead, Plainiffs offer Santa Fe Technologies, Inc. v. Argus Networks, Inc., 131 N.M.

9

772, 788, 42 P.3d 1221, 1237 (N.M.App.,2001) as more relevant to the case at bar.  In that case, the defendant sued actually participated in the commission of a business tort, and the court held that it had personal jurisdiction over his deliberate activities aimed at a New Mexico resident.  In this lawsuit, the Smiths allege that Mr. Cutler himself made the inquiry into their credit reports, accessed these reports without their permission or authorization, and sent them to their attorney representing them in the state court action. Thus, the facts are more similar to the facts in Santa Fe Technologies.

Defendant's reliance on the fiduciary shield doctrine fails for another reason as well: the doctrine does not provide, absolute protection from jurisdiction.  The New Mexico Court of Appeals stated in Santa Fe Technologies:

However, inasmuch as New Mexico exercises personal jurisdiction to the full extent the constitution allows. . ., the fiduciary shield doctrine is not constitutionally required in New Mexico. An employee of a corporation subject to personal jurisdiction will not be shielded from jurisdiction if he or she is a "primary participant[ ] in [the] alleged wrongdoing intentionally directed" at the forum state, which activities formed the bases of the jurisdiction over the corporation.

131 N.M. at 788, 42 P.3d at 1237 (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). The claims in this case arise from conduct allegedly performed by Mr. Cutler, not another employee or corporate officer of YBRF.  The Smiths allege that Mr. Cutler personally made inquiries regarding their credit reports, and personally send the reports, along with e-mail correspondence, to their counsel in New Mexico.  Therefore, the fiduciary shield doctrine does not apply to Defendant.

## CONCLUSION

The Court finds guidance from decisions by courts which have exercised personal

jurisdiction over a defendant who resides outside of the forum state, and who allegedly violated the FCRA by obtaining a credit report without cause or permission for an individual who resides in the forum state.

As part of the minimum contacts analysis, the court must look to see if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. . . .." Hanson, 357 U.S. at 253 (1958), and the case must arise from these activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

Defendant Cutler's inquiries into the Smiths' credit report were directed at New Mexico residents. These allegedly unauthorized access is the conduct on which the Complaint is based. Thus, I find that Defendant should have reasonably anticipated being haled into New Mexico courts. I further find and conclude that the exercise of personal jurisdiction over Mr. Cutler does not violate the due process clause of the Fourteenth Amendment.

Plaintiffs request alternative relief in the form of amending the Complaint to add a claim of invasion of privacy against Mr. Cutler. Resp. at 6. Given the disposition of this motion favoring Plaintiff's position, the Court assumes there is no need to address Plaintiffs' request to amend. However, should this be an incorrect assumption, Plaintiff may submit a formal request to amend for the Court's consideration.

**THEREFORE**,

**IT IS ORDERED** that Defendant Cutler's Motion to Dismiss for Lack of Personal Jurisdiction **(Doc. 10)** is hereby DENIED for reasons set forth in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE